HEADWATERS,
INCORPORATED, Plaintiff,

v.

BUREAU OF LAND MANAGEMENT, MEDFORD DISTRICT; David A. Jones, District Manager, in his official capacity; officers and agents of the Bureau of Land Management, Medford District, in their official capacities; Janco Logging Company, Defendants.

Civ. No. 87–1275–PA.

United States District Court,
D. Oregon.

May 3, 1988.

Charles G. Levin, Headwaters, Inc., Grants Pass, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Thomas C. Lee, Asst. U.S. Atty., Portland, Or., for Federal defendants.

### OPINION

PANNER, Chief Judge.

On November 18, 1987, plaintiff Headwaters, Inc. brought this action against defendants Bureau of Land Management (BLM) and Janco Logging Co. (Janco). Headwaters seeks to have this court enjoin defendants from logging part of the Two T's timber sale site until this court resolves Headwaters's claim under the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701–1784, and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706(2)(A), (D).

Headwaters moved for a preliminary injunction under Fed.R.Civ.P. 65 and for declaratory relief under 28 U.S.C. §§ 2201, 2202, and Fed.R.Civ.P. 57. BLM moved to dismiss under Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary judgment under Fed.R.Civ.P. 56(b). Subsequently Headwaters submitted a cross-motion for summary judgment under Fed.R.Civ.P. 56(a). At the March 28, 1988, hearing, both parties stipulated orally that the hearing would constitute the final disposition and trial on the merits. The question became whether to issue a permanent injunction. At trial I denied BLM's motion to dismiss. I deny Headwaters's request for a permanent injunction.

### BACKGROUND

In 1979, BLM adopted the Management Framework Plan (MFP) in which BLM performed a multiple use analysis for the Josephine Sustained Yield Unit. BLM incorporated the MFP by reference into the Final Environmental Statement Josephine Sustained Yield Unit Ten–Year Management Plan (FEIS). In 1985, BLM implemented the timber sale proposal on the Two T's site. Based on the FEIS, the Record of Decision which adopted the proposed plan in the FEIS, and a site-specific environmental assessment (EA) and supplements, the Medford District BLM manager made a finding of no significant impact (FONSI) on the sale site. Janco was the high bidder on the sale.

Headwaters alleges that BLM unlawfully marked for logging three units of public domain (PD) lands intermingled with fourteen units of O & C land[1] in the Two T's timber sale near Williams, Oregon. The PD units support old growth Douglas fir and a class II stream with a resident population of trout. BLM managed the entire Two T's sale for "high-intensity" timber harvesting.[2] The sale allegedly violated FLPMA's mandate that BLM manage lands under its authority for "multiple use." 43 U.S.C. § 1702(c). Headwaters contends that the MFP's multiple use analysis was inadequate, and that BLM did no other multiple use analysis. Headwaters concludes that the multiple use analysis was arbitrary and capricious in violation of the Administrative Procedures Act. 5 U.S.C. § 706(2)(A).

### DISCUSSION

This court has original jurisdiction over this federal question pursuant to 28 U.S.C. § 1331. The following are my findings of fact and conclusions of law made pursuant to Fed.R.Civ.P. 52(a).

1. **Failure To Exhaust Administrative Process And Laches**

■ BLM argues that this action is barred by the six year statute of limitation for civil actions against the government. 28 U.S.C. § 2401(a). BLM mistakenly believes that Headwaters seeks to vacate the eight year old MFP and FEIS. This action concerns the 1985 Two T's timber sale.

---

**1.** O & C land is land revested from the Oregon and California Railroad in the early 1900s. BLM manages the lands under the Oregon and California Railroad and Coos Bay Wagon Road Land Grants Act of 1937, 43 U.S.C. § 1181.

**2.** "High intensity" forest lands are "commercial forest lands ... suitable for continuous timber production with reasonable assurance of successful results from the application of intensive timber management practices." BLM, U.S. Dep't of the Interior, Josephine Sustained Yield Unit Final Environmental Statement 1–5 (1979).

Headwaters essentially seeks additional multiple use analysis. I reject BLM's failure to exhaust administrative remedies defense because Headwaters raised this issue before the Medford District BLM and the Interior Board of Land Appeals. I reject BLM's laches defense because Headwaters timely filed this action. *Cf. Citizens and Landowners Against the Miles City/New Underwood Powerline v. Secretary, United States Dep't of Energy,* 683 F.2d 1171, 1175 (8th Cir.1982) (laches not favored in environmental cases).

**2. BLM's Consideration Of Multiple Uses**

FLPMA directs that "management [of public lands administered by the BLM] be on the basis of multiple use and sustained yield unless otherwise specified by law." 43 U.S.C. § 1701(a)(7). An understanding of sustained yield is unnecessary in this action. BLM admits that the multiple use concept should be applied to the public lands in the Josephine Sustained Yield Unit. *See Hawaiian Elec. Co. v. United States EPA,* 723 F.2d 1440, 1447 (9th Cir. 1984) (deference given to agency's interpretation of its regulations). Congress defined "public lands" as:

> [A]ny land and interest in land owned by the United States within the several States and administered by the Secretary of the Interior through the Bureau of Land Management....

FLPMA, 43 U.S.C. § 1702(e). It defined "multiple use" as:

> [T]he management of the public lands and their various resource values so that they are utilized in the combination that will best meet the present and future needs of the American people; making the most judicious use of the land for some or all of these resources or related services over areas large enough to provide sufficient latitude for periodic adjustments in use to conform to changing needs and conditions; the use of some land for less than all of the resources; a combination of balanced and diverse resource uses that takes into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to,

recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values; and harmonious and coordinated management of the various resources without permanent impairment of the productivity of the land and the quality of the environment with consideration being given to the relative values of the resources and not necessarily to the combination of uses that will give the greatest economic return or the greatest unit output.

*Id.* at § 1702(c).

■ Headwaters challenges the adequacy of the multiple use analysis of the Two T's EA–FONSI which was "tiered" to the MFP. Tiering is the process by which BLM incorporates by reference broad environmental impact statements for an area with subsequent narrower statements on specific sites. 40 C.F.R. § 1508.28. If the MFP does not have a multiple use analysis that includes the PD lands, then the EA–FONSI must do so. 40 C.F.R. § 1508.9(b) (an EA "[s]hall include brief discussions of the need for the proposal, [discussions] of alternatives ... [and discussions] of the environmental impacts of the proposed action and alternatives ..."). This multiple use requirement is strictly construed. *Sagebrush Rebellion v. Hodel,* 790 F.2d 760, 766 (9th Cir.1986). Site-specific or parcel-by-parcel multiple use analyses are not necessary in the EA if the MFP considered multiple uses adequately. *Cf. Sierra Club v. Clark,* 774 F.2d 1406, 1411 (9th Cir.1985) (site-specific analysis unnecessary where prior BLM studies and supporting materials fulfill EIS information purposes).

■ The MFP for the Josephine Sustained Yield Unit discussed multiple uses. First, BLM specialists studied numerous resources besides timber in the Josephine Sustained Yield Unit and generated optimal management plans for each individual resource. Second, BLM examined all the resources together and generated alternative management plans to minimize the conflicts between the resources. BLM supported each alternative with a rationale and

discussion of support needs. Then for each resource, BLM made a multiple use recommendation, suggested alternatives to the recommendation, and discussed the reasons for choosing the recommendation. The analysis considered "all pertinent factors, including, but not limited to, ecology, existing uses, and the relative values of the various resources in particular areas." 43 C.F.R. § 1725.3–1. I conclude that the multiple use analysis in the MFP is adequate.

 Although the PD lands were not discussed separately, they were covered in the broad discussions in the MFP. Therefore neither the PD lands nor the Two T's sale needs a site-specific multiple use analysis. *Cf. Sierra Club v. Clark,* 774 F.2d at 1411.

Headwaters argues in general terms that the MFP presupposes dominant use because most of the lands covered therein are O & C lands. Headwaters attempts to prove prejudice against non-timber alternatives circumstantially by showing BLM managed only one percent of the PD lands classified as high-intensity lands for non-timber uses. 40 C.F.R. § 1502.(2)(f) (agencies shall not prejudice selection of alternatives before making a final decision); *id.* at § 1502.(2)(g) (EISs shall help assess the impacts of proposed actions, not justify decisions already made). I find no presupposition favoring dominant use or prejudicing non-timber alternatives. BLM did not make a management proposal favoring timber harvests until the FEIS.

 Once BLM did a valid multiple use analysis for PD lands, it could favor timber harvest objectives over other multiple use values. *Rocky Mountain Oil & Gas Ass'n v. Watt,* 696 F.2d 734, 738 (10th Cir.1982) (BLM need not permit all resource uses on a given parcel of land). BLM manages two-thirds of the PD lands in the Josephine Sustained Yield Unit for non-timber uses. I find that the multiple use analysis gave equal consideration to all resources in the Josephine Sustained Yield Unit, and that BLM managed the PD lands for a "combination of balanced and diverse resource uses...." 43 U.S.C. § 1702(c). BLM's

multiple use analysis and EA–FONSI decision to log the PD lands in the Two T's sale were not arbitrary or capricious.

## CONCLUSION

I find the multiple use analysis in the MFP is adequate. A separate site-specific multiple use analysis for the PD lands in the Two T's timber sale is unnecessary. The BLM fulfilled its obligations under FLPMA and the Administrative Procedure Act. Headwaters's request for a permanent injunction and declaratory relief is denied.